UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00124-MR

| TOMMY STOUT, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | <u>ORDER</u> |
| FNU HONEYCUTT, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, <u>see</u> 28 U.S.C. §§ 1915(e)(2) and 1915A. [Doc. 1]. Plaintiff is proceeding in forma pauperis. [Docs. 2, 6].

**I.  BACKGROUND**

Pro se Plaintiff Tommy Stout ("Plaintiff") is a prisoner of the State of North Carolina, currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. He filed this action on September 6, 2022, pursuant to 42 U.S.C. § 1983, naming the following Defendants in their individual capacities: (1) FNU Honeycutt,[1] identified as the Warden at Alexander; (2) FNU Dye, identified as a Deputy Warden at

---

[1] Plaintiff also refers to this Defendant as "Warden Huneycutt." [Doc. 1 at 1].

Alexander; (3) FNU Duncan, also identified as a Deputy Warden at Alexander; and (4) FNU Daves, identified as the Green Unit Manager at Alexander. [Doc. 1 at 1-2, 10]. Plaintiff claims these Defendants violated his Eighth Amendment and Fourteenth Amendment due process rights. In support of these claims, Plaintiff alleges as follows.

During all of 2021, while housed in Alexander's Green Unit, Plaintiff was allowed only eight to ten total hours of outdoor exercise and no opportunity for indoor exercise. [Id. at 4, 6]. During this time, Plaintiff would be given indoor recreation time, but Green Unit staff "would not allow the Plaintiff to exercise, walk, stand, or move during his indoor recreation." [Id. at 5]. Plaintiff was required to sit the entire time or be subject to disciplinary action. [Id.]. Inmates were and continue to be locked down in their cells 22 and one-half hours per day, seven days per week. Alexander is essentially run as a "giant solitary confinement unit/facility." [Id.]. Although a schedule allowing for outdoor recreation and exercise approximately three times per week was posted, the schedule "was generally never followed and outdoor exercise would not happen." [Id.]. The cells at Alexander are small and allow for very limited in-cell activity. Eventually, in early 2022, Plaintiff was allowed to exercise during his indoor recreation time approximately two to three times per week. This exercise, however, is very limited due to safety concerns

because the indoor dayroom on Green Unit was not built to be used as an exercise area. Moreover, Alexander is one of four or five close custody facilities designated to hold mental health level three inmates and Defendants are aware that Alexander holds a very high percentage of mental health and chronic care inmates. [Id. at 5-6]. It is a "basic understanding that exercise is a basic human need to maintain good physical and mental well being." [Id. at 7]. Running the facility as a permanent isolation unit with little to no exercise or opportunity to be outside has caused Plaintiff heightened anxiety and severe depression. [Id. at 6-7]. Defendants are aware of the negative impact of the lack of exercise on physical and mental health and are being deliberately indifferent to the consequences of their policies and practices. [Id. at 7].

Defendant Warden oversees operations at Alexander, and he directly ordered that outdoor exercise not be allowed. Even when exercise was allowed, he failed to ensure inmates were given the opportunity to exercise as scheduled. [Id. at 3]. Defendants Dye and Duncan also oversaw operations at Alexander. These Defendants made direct decisions on the exercise schedule and had a duty to ensure the schedule was followed. Defendant Duncan reviewed inmate grievances regarding the lack of exercise and did nothing to address the situation. [Id. at 3-4]. Defendant

3

Daves oversaw Green Unit staff and should have ensured inmates were being provided opportunities to exercise. Defendant Daves also reviewed inmate grievances regarding the lack of exercise opportunities and did nothing. [Id. at 4].

For injuries, Plaintiff claims that he has suffered a 25- to 30-pound weight gain, a blockage in his heart, the need for placement of a cardiac stent and a heart monitor, new heart rhythm issues, increased depression and anxiety, decreased life expectancy, constant headaches, and worsening of his high blood pressure and diabetes. [Id. at 8-10]. Plaintiff alleges that he had no heart issues prior to his being housed at Alexander without exercise. [Id. at 8].

For relief, Plaintiff seeks compensatory, punitive, and nominal damages and injunctive relief. [Id. at 10-11].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails

4

to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Plaintiff claims Defendants violated his Eighth Amendment rights to be free from cruel and unusual punishment and deliberate indifference to Plaintiff's serious medical needs. Plaintiff also claims that Defendants violated his Fourteenth Amendment due process rights.

## A. Eighth Amendment

### 1. Cruel and Unusual Punishment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.3d 1375, 1381 (4th Cir.1993).

A reviewing court "owe[s] 'substantial deference to the professional judgment of prison administrators.'" Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). "[R]estrictive prison regulations are permissible if they are 'reasonably related to legitimate penological [objectives],' and are not an 'exaggerated response' to such objectives." Id. (quotations omitted) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). The length of time Plaintiff was subjected to the harsh conditions

is an important factor in analyzing whether his constitutional rights were violated. See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir.1997).

"[I]n certain circumstances, restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment in violation of the Eight Amendment." Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980) (citations omitted). "In deciding whether conditions at a jail are so onerously burdensome as to reach constitutional dimensions, courts must look at the totality of the circumstances, including the extent to which the restrictions adversely affect the mental or physical health of the inmate." Id. (citations omitted). These circumstances include the overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities. Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992). "Thus, confinement or punishment conditions imposed under one set of circumstances may constitute an Eighth Amendment violation; yet the same conditions, imposed under different circumstances, would not." Id.

Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, he has stated an Eighth Amendment cruel and unusual punishment claim against all Defendants.

## 2. Deliberate Indifference to Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment also fall within the Eighth Amendment's prohibition against cruel and unusual punishment, Estelle v. Gamble, 429 U.S. 97, 104 (1976). For the sake of clarity, however, the Court will treat this claim separately here. To state a claim under the Eighth Amendment on this ground, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). See also Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To establish a deliberate indifference claim against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to prison physicians' misconduct. Miltier v. Beord, 896 F.2d 848, 854 (4th Cir. 1990).

Here, Plaintiff alleges that it is commonly understood that regular exercise is a basic human need and extremely important to the psychological and physical well-being of inmates. Plaintiff also alleges that Defendants knew that Alexander had a very high percentage of mental health and chronic care inmates. Plaintiff, however, does not allege that Defendants, who are all non-medical personnel, had subjective knowledge of the substantial risk of harm to the Plaintiff from the lack of exercise. The subjective element of a deliberate indifference claim, therefore, is lacking. As such, the Court will dismiss Plaintiff's Eighth Amendment claim based on deliberate indifference to Plaintiff's serious medical needs on initial review for Plaintiff's failure to state a claim for relief.

**B. Fourteenth Amendment**

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594

(4th Cir. 1994).

Here, Plaintiff claims that Defendants violated his due process rights "[b]y creating practices that deprived the Plaintiff of life expectancy without due process." [Doc. 1 at 3]. Assuming *arguendo* that the conditions at issue are adequately harsh and atypical, Plaintiff has failed to adequately allege that a law or procedure created a liberty interest in their avoidance, or that any Defendant failed to provide him with the required process before those conditions were imposed. See Prieto v. Clarke, 780 F.3d 245, 251 (4th Cir. 2015) ("harsh and atypical confinement conditions in and of themselves [do not] give rise to a liberty interest in their avoidance"). The Court will, therefore, dismiss Plaintiff's Fourteenth Amendment claim on initial review because Plaintiff has failed to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Eighth Amendment cruel and unusual punishment claim survives initial review against all Defendants. Plaintiff, however, has failed to state a claim based on deliberate indifference to his serious medical needs or for violation of his Fourteenth Amendment due process rights and these claims will be dismissed.

# **ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint [Doc. 1] passes initial review against all Defendants for subjecting Plaintiff to cruel and unusual punishment as set forth in this Order. Plaintiff's remaining claims fail initial review and are **DISMISSED**.

**IT IS, THEREFORE, ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Honeycutt, Dye, Duncan, and Daves, who are alleged to be a current or former employees of the North Carolina Department of Public Safety.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED**.

Signed: October 30, 2022

Martin Reidinger
Chief United States District Judge